

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-24-2002

# Wolf v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 01-1869

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Wolf v. Atty Gen USA" (2002). *2002 Decisions.* Paper 429.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/429

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed July 24, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 01-1869

CARL WOLF; JOSEPH CRAVEIERO, JR.; DOUGLAS
NYHUIS, for themselves and all other inmates of the
Federal Correctional Institution at McKean,
        Appellants

v.

JOHN ASHCROFT, ATTORNEY GENERAL OF THE
UNITED STATES OF AMERICA, IN HIS OFFICIAL
CAPACITY AS ATTORNEY GENERAL OF THE UNITED
STATES; KATHLEEN M. HAWK, DIRECTOR-BOP, IN HER
OFFICIAL CAPACITY AS DIRECTOR OF THE FEDERAL
BUREAU OF PRISONS; JOHN E. HAHN, WARDEN, IN HIS
OFFICIAL CAPACITY AS THE WARDEN OF THE FEDERAL
CORRECTIONAL INSTITUTION AT MCKEAN

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 97-cv-00408E)
District Judge: Honorable Sean J. McLaughlin

Argued January 7, 2002

Before: MANSMANN,* RENDELL and FUENTES,
Circuit Judges

(Filed July 24, 2002)

_____

* The Honorable Carol Los Mansmann participated in the oral argument
and conference in this case, but died before she could join or concur in
this Opinion.


        Jere Krakoff, Esq. [ARGUED]
        Pennsylvania Institutional
         Law Project
        429 Forbes Avenue
        1705 Allegheny Building
        Pittsburgh, PA 15219
        Counsel for Appellants

        Laura S. Irwin, Esq.
        Office of U.S. Attorney
        633 U.S. Post Office & Courthouse
        Pittsburgh, PA 15219

        Edward Himmelfarb, Esq. [ARGUED]
        U.S. Department of Justice

Civil Division, Appellate Staff
601 D Street, N.W.
Washington, DC 20530-0001
Counsel for Appellees

OPINION OF THE COURT

RENDELL, Circuit Judge:

A class of federal prisoners challenges a prison policy
that prevents them from viewing movies rated R or NC-17.
The District Court granted the government's motion for
judgment on the pleadings, reasoning that the prison policy
met the requirement that restrictions on First Amendment
rights of inmates be "reasonably related to legitimate
penological interests." Turner v. Safley, 482 U.S. 78, 89
(1987). However, we conclude that the District Court did
not conduct a proper, thorough analysis under Turner in
that it did not articulate the relevant penological interest or
the prohibition's relationship to it, and, further, it
considered only Turner's first prong. Also, the Court found
that it could rely on "common sense" in determining
whether Turner's first prong had been satisfied, but we
conclude that this approach may not always "fit" and an
evidentiary showing may be required in certain situations.
Accordingly, we will reverse and remand for further
consideration in accordance with this opinion.

2

We have jurisdiction under 28 U.S.C. S 1291 and our
review of a dismissal under Rule 12(c) is plenary. We will
view the facts in the complaint and any reasonable
inferences that can be drawn from them in favor of the
non-moving party, here the class of prisoners, and will
affirm the dismissal only if no relief could be granted under
any set of facts that could be proved. E.g., Allah v. Al-
Hafeez, 226 F.3d 247, 249-50 (3d Cir. 2000).

At issue here is a prison policy that provides that"[n]o
movies rated R, X, or NC-17 may be shown to inmates."
Program Statement 5370. Only the ban on movies rated R
and NC-17 represented a recent change in policy; X-rated
movies have long been banned. See 28 C.F.R.S 544.33. The
policy was designed to implement the Zimmer Amendment,
which prevents the expenditure of funds for the viewing of
movies rated R, X, or NC-17 in prison. See Omnibus
Consolidated Appropriations Act of 1997, Pub. L. No. 104-
208, S 611, 110 Stat. 3009 (1996). Although the Complaint
attacks the underlying legislation, on appeal the prisoners
attack only the policy. In their Complaint, the prisoners
also challenged the Ensign Amendment, which bars the
expenditure of federal funds to distribute or make available
to prisoners any commercially published material that is
sexually explicit or features nudity. See id.  at S 614. The
District Court granted the government's motion for
judgment on the pleadings regarding plaintiffs' attack on
the Ensign Amendment. The inmates' Ensign Amendment
claims are not part of this appeal.

Whether the policy restricting R-rated and NC-17-rated movies imposes permissible limitations on the inmates' First Amendment rights depends on the four factors set forth in Turner.[1] There, the Supreme Court directed courts first to assess whether there is a " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." Turner, 482 U.S. at 89. If the interest is legitimate and neutral, and the connection is valid and rational, then courts should engage in the inquiries under the succeeding

_____

1. The government has conceded the First Amendment implications of this prohibition.

3

three prongs: whether "alternative means of exercising the right . . . remain open to prison inmates," "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and, finally, whether there are "ready alternatives" to the rule that would accommodate prisoners' rights at de minimus cost to penological interests. Id. at 90-91.

It is our view that, while the District Court acknowledged that Turner established the applicable standard and recited all four Turner factors, it did not perform the necessary analysis. The Court's four-page order discussed the facial challenges to the Ensign Amendment, to the Zimmer Amendment, and to the Amendments' implementing regulations and policies, as well as the as-applied challenges to all of these. Focusing on Turner 's first factor and on Waterman v. Farmer, 183 F.3d 208 (3d Cir. 1999), in which we cited Amatel v. Reno, 156 F.3d 192 (D.C. Cir. 1998), cert. denied, 527 U.S. 1035 (1999), with approval, the District Court concluded that no evidentiary record was required because we endorsed a "common sense" approach in Waterman. It then proceeded to rule in conclusory fashion that the Amendments and their implementing regulations were "neutral and reasonable, and rationally related to legitimate penological interests."

In relation to the first factor, the Court's opinion was deficient in that it never stated or described the interest purportedly served by the prison policy, nor did it determine whether the interest was neutral and legitimate. The government offered several theories in general terms at different times, but the District Court opinion did not mention or discuss any such theories or interests. We cannot tell, for instance, whether the Court credited the government's assertion that the movies posed security risks, or that the absence of such movies deterred people from committing crimes, or that denial of such movies fosters rehabilitation. Moreover, the District Court did not discuss how any of the particular interests offered by the government were "rationally connected to" the restrictions

on movies rated R or NC-17.

We have noted that the party defending the policy should "demonstrate" that the policy's drafters "could rationally have seen a connection" between the policy and the interests, and that this burden, though slight, must "amount[ ] to more than a conclusory assertion." Waterman, 183 F.3d at 217, 218 n.9.2 Part of the court's inquiry under Turner is whether the government has satisfied this requirement. While we recognize that the court need not necessarily engage in a detailed discussion, still the brief, conclusory statement set forth in the District Court's opinion falls short, and makes it difficult for us to conclude that its approach to the first Turner prong passes muster.

The inmates also attack the District Court's ruling that the connection between the prohibition and the interests to be advanced was a matter of "common sense," arguing, instead, that evidence is necessary to support such a finding and the Court erred in ruling based on the pleadings alone. Declining to follow the Magistrate Judge's recommendation that an evidentiary record should be developed before ruling based on Turner, the District Court stated, somewhat categorically, that a "common sense approach to the Turner reasonableness test has been accepted by the Third Circuit." The inmates seek a similarly categorical ruling that evidence must be presented to establish the necessary connection.

We eschew both categorical approaches and hold, instead, that while the connection may be a matter of common sense in certain instances, such that a ruling on this issue based only on the pleadings may be appropriate, there may be situations in which the connection is not so apparent and does require factual development. Whether the requisite connection may be found solely on the basis of "common sense" will depend on the nature of the right, the nature of the interest asserted, the nature of the prohibition, and the obviousness of its connection to the

---

2. We do not reach the issue pressed by the government in its brief as to how the "reasonable relationship" aspect compares to the "rational basis" test for equal protection, nor do we see the need to elaborate on the nature of the government's burden, as our statement in Waterman that it must "demonstrate" the necessary relationship should suffice.

proffered interest. The showing required will vary depending on how close the court perceives the connection to be.3 A prohibition on inmate gatherings in prison common areas after 11-o'clock at night might have an obvious relationship to security concerns, as would a prohibition on publications that featured escape plans, Amatel, 156 F.3d at 206 (Wald, J., dissenting), or instructions on assembling weapons,

Giano v. Senkowski, 54 F.3d 1050, 1059-60 (2d Cir. 1995) (Calabresi, J., dissenting). Likewise, the connection between the goal of rehabilitation and a ban on distributing sexually explicit magazines to "repetitive and compulsive" sexual offenders may well be, as we stated in Waterman , sufficiently obvious to be evaluated as a matter of common sense. But is it a matter of common sense, as was argued here, that prohibiting movies rated R or NC-17 deters the general public from committing crimes, lest they be sent to prison where they are not permitted to watch R-rated movies? We are not so sure. On remand, the District Court must describe the interest served, consider whether the connection between the policy and the interest is obvious or attenuated -- and, thus, to what extent some foundation or evidentiary showing is necessary -- and, in light of this determination, evaluate what the government has offered.

We also note that while a court can bolster its finding of a connection by reference to decisions of other courts on the same issue, here the District Court referenced how other courts had viewed one of the two types of restriction -- namely, the Ensign Amendment and its prohibitions on

_____

3. See, e.g., Bazzetta v. McGinnis , 286 F.3d 311 (6th Cir. 2002) (striking down prison restrictions on visitors in absence of evidence justifying restriction on First Amendment rights); Beerheide v. Suthers, 286 F.3d 1179 (10th Cir. 2002) ("minimal showing" required to demonstrate relationship between restriction on special Kosher meals and prison budgetary and inmate relations goals); Morrison v. Hall, 261 F.3d 896 (9th Cir. 2001) (striking down requirement that prisoners receive only first or second class incoming mail in absence of evidence demonstrating rational connection between postage rate and risk of contraband). In Fraise v. Terhune, 283 F.3d 506, 518 (3d Cir. 2002), we found that the "expert judgment" of correctional officers regarding the threat to security posed by the Five Percent Nation provided adequate grounds for purposes of the "rational connection" test.

distributing sexually explicit publications in prison.4 Therefore, the District Court's conclusion that"other Courts have tackled the precise regulations presented here" and "every court facing challenges to these and similar enactments have upheld them" does not really support a finding as to the policy implementing the Zimmer Amendment.

Further, although the District Court recited the final three Turner factors, it never applied them to the circumstances presented by the claims of the inmate class. Instead, its ruling turned exclusively on Turner 's first factor. We have stated clearly that the determination that there is a rational relationship between the policy and the interest "commences rather than concludes our inquiry" as "not all prison regulations that are rationally related to such an interest pass Turner's 'overall reasonableness standard.' " DeHart v. Horn, 227 F.3d 47, 53 (3d Cir. 2000) (en banc). The first factor is "foremost" in the sense that a

rational connection is a threshold requirement -- if the
connection is arbitrary or irrational, then "the regulation
fails, irrespective of whether the other factors tilt in its
favor." See Shaw v. Murphy, 532 U.S. 223, 229-30 (2001).
But, as we made clear in DeHart, we do not view it as
subsuming the rest of the inquiry. On remand, if the
District Court again concludes that the first factor is
satisfied, it must then proceed to consider the remaining
Turner factors in order to draw a conclusion as to the
policy's overall reasonableness.5

_____

4. The one case that involved the Zimmer Amendment turned on grounds
not at issue here. See Cuoco v. Hurley, 2000 WL 1375273 (D. Colo. Sept.
22, 2000).

5. The government's argument that Appellants waived argument based
on the three other Turner factors by failing to press it on appeal is
without merit. Appellants devoted a section of their brief to the argument
that "there is no indication that the District Court actually applied the
Turner factors to the facts of this case." Clearly this raises -- and does
not waive -- the issue. Appellants do not need to argue that the District
Court misapplied the factors to their case and that, actually, they should
be applied in some other way, when the District Court clearly did not
apply the factors at all. Moreover, we are not weighing these factors on
appeal, but rather remand for the District Court to do so in the first
instance.

As to the need for a foundation for these three prongs, it
is worth noting that we have historically viewed these
inquiries as being fact-intensive. We have said that
evaluations of prison restrictions under Turner  require "a
contextual, record-sensitive analysis." DeHart, 227 F.3d at
59 n.8 (remanding "so that the parties may more fully
develop the record"). We have also indicated that courts of
appeals ordinarily remand to the trial court where the
Turner factors cannot be assessed because of an
undeveloped record. Doe v. Delie, 257 F.3d 309, 317 (3d
Cir. 2001). If the District Court concludes that the Turner
analysis cannot be undertaken on an undeveloped record,
then the Court should treat the matter as on summary
judgment, and rule only after considering the factual basis
developed by affidavits or depositions.

For the above reasons, we will REVERSE and REMAND
for further consideration and proceedings in accordance
with this opinion.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit